**Earl DAVIS, Sandra Davis, J. B. Clay, Joyce Wesley, and James Ingram, Plaintiffs-Appellants,**

v.

**Dennis MURPHY and Cary Cameron, etc., and Michael Murphy, etc., and City of Milwaukee, Defendants-Appellees.**

**No. 76–1886.**

United States Court of Appeals, Seventh Circuit.

Heard April 13, 1977.

Decided July 28, 1977.

---

Stephen M. Glynn, Milwaukee, Wis., for plaintiffs-appellants.

Gerald P. Boyle, D. Michael Guerin, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiffs are five black residents of Milwaukee, Wisconsin. Two of the defendants are Milwaukee police officers, and the third is a Milwaukee fireman. The City of Milwaukee was an additional defendant but was dismissed as a party.[1]

Count I of the amended complaint filed on November 12, 1973, was brought under Section 1983 of the Civil Rights Act (42 U.S.C. § 1983).[2] Count I alleged that police officers Cary Cameron and Dennis Murphy, and Michael Murphy acting in concert with them, were driving north on North 27th Street in Milwaukee in the early morning

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Because of *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, plaintiffs do not charge any error with respect to the dismissal of the City of Milwaukee.

2. Plaintiffs no longer rely on Sections 1985, 1986 and 1988 of the Civil Rights Act (Br. 1–2).

of Saturday, June 24, 1972, while four of the plaintiffs were driving in their car directly behind defendants. Defendants taunted plaintiffs with racial epithets and subsequently assaulted them and James Ingram, a bystander and additional plaintiff. Thereafter the five plaintiffs were arrested and taken to jail. Although defendants sought to bring various charges against plaintiffs, they were never formally charged.

The complaint asserts that defendants, "without legal justification and without warrants and without probable cause and under color of law," deprived plaintiffs of their rights to be free from unlawful seizures, arrests and assaults as guaranteed by the Fourth and Fourteenth Amendments. Plaintiffs also claim that defendants' malicious attempt to have false criminal charges placed against plaintiffs violated their Fourteenth Amendment rights. They assert that without legal cause defendants used malicious, unlawful, excessive, unreasonable and violent force in seizing and assaulting plaintiffs, in violation of their Fourth and Fourteenth Amendment rights. The willful and unlawful assaults inflicted on plaintiffs were also said to contravene their rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. The Thirteenth Amendment was said to have been violated because defendants summarily inflicted punishment upon plaintiffs as a result of their Afro-American ancestry. The defendants were charged with acting under color of state law and under color of city ordinances.

The second cause of action based on 42 U.S.C. § 1985(2) and (3) has been abandoned because of the one-year statute of limitations contained in 42 U.S.C. § 1986. (See defendants' Br. 8.) Count III was a pendent claim under Chapters 261 and 262 of the Wisconsin Statutes.

Four of the plaintiffs sought compensatory damages in the amount of $20,000 for mental distress and impairment of reputation and punitive damages of $200,000, whereas plaintiff Earl Davis, who had been treated at a hospital because of injuries suffered on this occasion, sought $500,000 compensatory damages and $1 million in punitive damages. Plaintiffs also sought attorneys' fees and costs.

At the conclusion of plaintiffs' evidence at a bench trial, the defendants moved for dismissal on the ground that plaintiffs had not shown "a deprivation of a constitutional right or a right secured by the laws of the United States" (App. 4). In granting the motion on April 29, 1976, Judge Gordon assumed that the acts were " 'under color' of state official conduct" (*idem*) but dismissed the action solely because of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, which had been decided a month before the trial. We disagree that *Paul* is controlling and therefore reverse.

Viewing the evidence favorably to the plaintiffs, as we must upon a motion to dismiss, the plaintiffs showed that four of them (Mr. and Mrs. Earl Davis, Joyce Wesley and J. B. Clay) were in the Davis' automobile heading north on North 27th Street in Milwaukee around 2:00 a. m. on June 24, toward a restaurant. When they reached the intersection of North 27th and West Galena Streets, passenger Michael Murphy in the car ahead of them yelled, "Dim your bright lights, niggers." Dennis Murphy was driving and Cary Cameron was in the front passenger seat. Michael Murphy was in the rear seat. After the traffic light changed to green and the cars continued north on 27th Street, Michael Murphy continued to hurl racial epithets at plaintiffs. At a red light at 27th Street and West North Avenue, both cars were stopped with defendants' car on the left of plaintiffs. Michael Murphy said, "You niggers caught us. Do you want to fight?" He continued to call plaintiffs "niggers" and jumped out of his brother's car and began jumping up and down on the trunk of the Davis automobile. Plaintiff Earl Davis said, "Let me get out and get this man off the trunk of my car", whereupon Cary Cameron called plaintiffs "niggers" and threw something causing glass to shatter on driver Sandra Davis' lap.

When Earl Davis sought to remove Michael Murphy from the trunk of the Davis car, both men began wrestling. Dennis Murphy came to his brother's assistance, with both Murphys fighting Earl Davis. Plaintiff Clay tried to pull one of the Murphys off Earl Davis.

When Dennis Murphy and Cary Cameron left their car, they identified themselves as police officers and displayed badges. Cameron then entered the fray. Both Dennis Murphy and Cameron displayed their guns. When Clay pulled one of the Murphys off Davis, Cameron hit Clay who responded by hitting Cameron with a drinking glass. Cameron began to beat Earl Davis, who by then was prone with his hands behind his back, on the head with a pistol. Dennis Murphy helped Cameron beat Earl Davis. Mrs. Davis took Joyce Wesley's purse to hit Cameron in order to stop him from hitting her husband, and she was thrown back on the sidewalk first by Dennis Murphy and then by Michael Murphy, who lined her, Joyce Wesley and Clay against a wall with a cocked gun in their faces. Cameron slapped Mrs. Davis in the face and Michael Murphy kicked Earl Davis in the face. Dennis Murphy ripped out the entire front of Joyce Wesley's dress, partially baring her breasts because he wanted to see their size.

Plaintiff Ingram, a taxi driver, was on his way to the same restaurant where the Davis party was headed and heard Sandra Davis screaming. He talked to Sandra Davis but did not give her anything nor touch her. He left her to go into the restaurant. While he was entering the restaurant, Michael Murphy tore all the buttons off Ingram's jacket, turned him around and wrestled him to the ground after pushing him against the wall, later kicking him in the face while he was handcuffed.

Thereafter, uniformed police officers arrested the five plaintiffs and took them to jail where they were held ten hours. None of the plaintiffs was ever charged with an offense growing out of the incident. Upon his release, Earl Davis' head wounds were stitched at a hospital. Because of his head and other injuries he was unable to return to work until July 11, 1972.

■ Although Judge Gordon had no problem with the color of law requirement of Section 1983, defendants challenge this element, saying the police officer defendants were off duty and not in uniform. The evidence disclosed that when they exited their car, Dennis Murphy and Cameron immediately identified themselves as police officers. They were carrying their badges and guns and were on duty under regulations of the Milwaukee Police Department "to be always subject to duty * * *." Plaintiffs have sufficiently shown that these defendants were acting under color of law. *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975), certiorari dismissed as improvidently granted, 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760.

■ As to defendant fireman Michael Murphy, his counsel urges that he is not subject to a Section 1983 action unless plaintiffs prove that he was part of a conspiracy to interfere with civil rights under 42 U.S.C. § 1985. The complaint alleged that he too was acting under color of state law, and the proof showed that he was a willing participant in joint activity with state agents by acting in concert with the co-defendant policemen. That suffices. *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267.

In *Paul v. Davis, supra*, the Supreme Court held that chief of police Paul's defamation of Davis did not state a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment. There Davis "pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded" (424 U.S. at 700, 96 S.Ct. at 1160). The Court concluded that "every defamation by a public official" is not a deprivation of liberty within the meaning of the Due Process Clause of the Fourteenth Amendment (424 U.S. at 702, 96 S.Ct. at 1161) and that none of Davis' "theories of recovery were based upon rights secured to him by the Fourteenth Amendment" (424 U.S. at 713–714, 96 S.Ct. at 1166). But the Court reaffirmed its holding in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d

492, that Section 1983 makes a deprivation of interests guaranteed in one of the provisions of the Bill of Rights incorporated into the Fourteenth Amendment actionable.[3] 424 U.S. at 710 n. 5, 96 S.Ct. 1155. The present plaintiffs' amended complaint is plainly based on this proposition.

As shown in our brief summation of the amended complaint, plaintiffs asserted that the assaults inflicted upon them were excessive, that their arrests were unlawful, and that defendants maliciously attempted to have false charges issued against them, all in specific violation of the Fourth and Eighth Amendments, as incorporated in the Fourteenth Amendment, as well as the procedural due process guarantee embodied in the Fourteenth Amendment itself. Defendants were charged with acting maliciously and willfully as required by *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976). Plaintiffs' proof taken as true also shows that defendants' conduct was either intentional or in reckless disregard of plaintiffs' rights, thus satisfying *Bonner* and *Kimbrough v. O'Neil*, 545 F.2d 1059 (7th Cir. 1976). As we noted in *Clark v. Ziedonis*, 513 F.2d 79, 80 n. 1 (7th Cir. 1975), "[t]he use of excessive force by police officers in effecting an arrest is a well-recognized ground for liability under 42 U.S.C. § 1983." Because plaintiffs have sufficiently alleged and proved gross violations of the Bill of Rights as assimilated into the Fourteenth Amendment and of the procedural due process pregnant of the Fourteenth Amendment itself (*Harris v. Harvey*, 419 F.Supp. 30, 32 (E.D.Wis.1976; Gordon, J.)),[4] we need not consider the claimed violation of the Thirteenth Amendment.

Since a cause of action was stated under Count I and since the plaintiffs' proof supports their *prima facie* case, the district court improperly dismissed Count III containing the plaintiffs' pendent state law claim against defendants. In their brief, plaintiffs state that they have already presented their evidence with respect to the state law claim. Therefore, judicial economy and convenience to the parties dictate that the district court also decide the merits of Count III. *Colaizzi v. Walker*, 542 F.2d 969, 974 (7th Cir. 1976).

Reversed and remanded for further proceedings consistent herewith.[5]

---

**3.** *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, does not support the decision below because there the Supreme Court was only considering due process procedural safeguards and did not consider under what circumstances corporal punishment of a public school child might give rise to an independent federal cause of action to vindicate substantive rights under the Due Process Clause (430 U.S. at 679 n.47, 97 S.Ct. 1401). In his dissenting opinion, Justice Stevens stated that *Paul v. Davis* "may have been correctly decided on an incorrect rationale," 430 U.S. at 701, 97 S.Ct. at 1428, suggesting but not endorsing the thought that an adequate state

remedy for defamation may satisfy the due process requirement when a State has impaired an individual's reputation.

**4.** See also *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; *Russ v. Ratliff*, 538 F.2d 799, 804 (8th Cir. 1976); *Sartin v. Commissioner of Public Safety of State of Minnesota*, 535 F.2d 430, 434 (8th Cir. 1976); *Pritchard v. Perry*, 508 F.2d 423, 425 (4th Cir. 1975); *Howell v. Cataldi*, 464 F.2d 272, 281–282 (3d Cir. 1972).

**5.** Since the case has not yet been fully tried, Circuit Rule 18 will not apply.