**Michael Dennis LAWSON, Plaintiff,**

v.

**James WIGGINS, etc., et al., Defendants.**

**Civ. A. No. CV82–PT–0559–S.**

United States District Court,
N.D. Alabama, S.D.

Feb. 23, 1983.

---

J. Michael Campbell, Birmingham, Ala., for plaintiff.

Herbert Jenkins, Jr., Birmingham, Ala., for defendant Wiggins.

Whit Thomas, Birmingham, Ala., for defendant Lawson.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause is before this court on Motions for Summary Judgment which were filed by each defendant, James Wiggins and Renee Lawson, on December 30, 1982 and January 6, 1983, respectively. Pursuant to this court's order of January 7, 1983, this matter was to be deemed submitted on January 27, 1983 but in response to a request from the plaintiff the submission date was extended to February 1, 1983.

Plaintiff asserts that this court has jurisdiction over this controversy under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3), (4). The alleged basis of the § 1983 claim is that the defendants conspired and acted under color of state law to deprive plaintiff of his civil rights as protected by the United States Constitution. The alleged deprivation was effectuated by a state court warrant issued by a Magistrate of the Circuit Court of Jefferson County based on information received from defendant Renee Lawson which resulted in the arrest of the plaintiff for burglary. *Allegedly,* throughout the time of the conspiracy and resulting arrest, defendant James Wiggins was a policeman employed by the City of Birmingham and acting under color of state law. Wiggins and Renee Lawson acknowledge that Wiggins was employed by the City of Birmingham as a policeman at all times pertinent to this case. Defendants contend, however, that there is no genuine issue of material fact as to the dispositive jurisdictional question (whether defendants' actions were under color of state law) and they are entitled to judgment as a matter of law.

Dennis Lawson and Renee Lawson were granted a divorce by the Jefferson County Circuit Court on July 20, 1980. Defendant Wiggins and Renee Lawson became friends and began dating one another sometime prior to March 19, 1981, the day the plaintiff was arrested.

Dennis Lawson (Mr. Lawson), under the divorce decree, had the right to live in the house, which he and Renee Lawson (Ms. Lawson) owned jointly, located at 7827 7th Avenue North, East Lake until the house could be sold. Mr. Lawson conveyed his interest in the house and the lot to Ms. Lawson on February 26, 1981.

Ms. Lawson says in her deposition that James Wiggins, her son Casey, and she went to the house on Saturday, February 28 to work in the yard. Ms. Lawson says she talked to her neighbors on both sides of the

house that day. According to Ms. Lawson, one neighbor, Mrs. Eley, said that she had seen Mr. Lawson at the house on the day before (February 27) and he was getting a stove, refrigerator and chandelier from the house. Ms. Lawson said her other neighbor, Mrs. Lillian Hubbard, told her that she had seen "Dennis over there yesterday getting some things."[1] Relying on this information, Ms. Lawson reported a "burglary" at her 7th Avenue residence to the Birmingham Police Department (B.P.D.) on or shortly after February 28, 1981. She maintains that she named Dennis Lawson as a suspect because of the conversations she had with her neighbors.

The case was assigned to Sgt. T.E. Joiner of the B.P.D. and an incident report, No. H–155431, was filed. A copy of Sgt. Joiner's affidavit is attached to both defendants' motions for summary judgment. Sgt. Joiner is assigned to the East Precinct of the B.P.D. and handles reports of burglaries, particularly cases in which a suspect is named in the report. Sgt. Joiner talked to Ms. Lawson and "advised her that she would have to talk to a District Attorney so that he (D.A.) could decide whether or not an arrest warrant should be issued for the suspect." Regarding James Wiggins, Sgt. Joiner's affidavit says:

> I am familiar with Officer James L. Wiggins, Jr., who also is assigned to the East Precinct as a patrol officer.

> [After advising Ms. Lawson], I also discussed the procedure with Officer Wiggins and he asked if it would be best for him to come with Renee Lawson with whom he said that [sic] he was dating. I told him he could if he wanted to. At no time did he request or suggest that a warrant be issued. In fact, he was advised that only the District Attorney

could make that decision. On the 13th day of March, 1981, I met Officer Wiggins and the victim Renee Lawson at the District Attorney's Office and Scott Boudreaux, a Deputy District Attorney, was assigned to screen the case. We went into his office and Renee Lawson told him everything that she had told the investigating officer and myself. Officer Wiggins did not talk to the District Attorney about the case since he was not a witness. After this screening, a warrant was typed up and taken to the issuing Magistrate who was Mary Drew. Officer Wiggins did not sign a warrant. Thereafter, the suspect, Michael Dennis Lawson, was arrested on the warrant but I did not follow up on the case for its disposition.

Affidavit of Sgt. T.E. Joiner at pp. 1–2. This statement is consistent with the position of both defendants as to the role Officer Wiggins played *vis a vis* Sgt. Joiner and the District Attorney. Plaintiff offers no evidence concerning Wiggins' participation in obtaining the warrant. Plaintiff apparently expects this court to draw the inference that he may have acted under color of state law from the fact that he was present and a police officer. Both Ms. Lawson and Officer Wiggins admit having discussed, prior to seeing the Magistrate, the possibility of having Dennis Lawson arrested. Sgt. Joiner had no personal information as to the arrest itself or Officer Wiggins' role therein.

■ The affidavits submitted by the plaintiff do not discuss the circumstances surrounding the arrest of the plaintiff but the complaint and the briefs of the defendants containing excerpts from depositions describe the situation as it was at the time of the arrest.[2] Plaintiff maintains that on

---

1. This quotation is from Ms. Lawson's deposition at page 13. The *plaintiff* has submitted an affidavit signed by Lillian Hubbard which indicates that Mrs. Hubbard did not recognize the men she saw at the Lawson home on February 27. She further states that she does not remember telling Ms. Lawson that she had seen Dennis Lawson on the 27th. Ms. Lawson has submitted an affidavit signed by Mrs. Hubbard which predates the Hubbard affidavit sub-

mitted by the plaintiff. The earlier affidavit indicates that Mrs. Hubbard *had* seen Mr. Lawson on the premises of his former residence on Friday the 27th. This apparent factual dispute is not "material" to the state action question and thus is no bar to further inquiry.

2. This court has already ruled as a matter of law that an arrest made pursuant to a valid warrant does not expose the arresting officer to

the evening of March 19, 1981 he and Ms. Lawson agreed to meet at a local lounge to discuss the plaintiff's visitation rights with their son, Casey. Plaintiff contends that he "was placed under arrest by defendants James Wiggins and John Doe and subsequently charged with the crime of burglary, third degree" after he entered the lounge for the rendezvous with Ms. Lawson.

Defendant Wiggins' brief indicates that Officer M.K. Edmondson of the Birmingham Police Department actually arrested the plaintiff while Wiggins was off-duty and with Officer Edmondson in order to identify Mr. Lawson. According to Wiggins' brief:

> Defendant Renee Lawson had called Officer Wiggins and told him that the plaintiff wanted to meet her at a local lounge. Officer Wiggins went to the Precinct and reported that there was a warrant for the plaintiff and where he could be found and he would meet the arresting officer there.

Apparently, Wiggins and Officer Edmondson waited for Mr. Lawson to arrive, and once he was there, placed him under arrest pursuant to the warrant issued by the Magistrate. Mr. Lawson's deposition at pp. 27–28 says:

> And we had set up a meeting place to meet and discuss visiting Casey and trying to kind of get along a little better than we had been.
>
> We set up that meeting place and I drove up that night somewhere around 6 or 7, somewhere like that. I don't recall exactly what time. And I seen my ex-wife's car in the parking lot.
>
> So I went in. And as I walked through the door, I seen Mr. Wiggins sitting to my left. And I went on back and sat down. And about five minutes later, him [and] another guy walked up. And *the guy that was with him said,* are you

Dennis Lawson? I said, yes, sir. *He said,* well, you're under arrest.

(emphasis added).

The arrest initiated a prosecution of the matter in the Criminal Division of the Jefferson County Circuit Court. The case was dismissed on April 28, 1981 "For Want of Prosecution" by the State. Ms. Lawson asserts that she did not appear on that date due to a lack of notice.

Plaintiff filed this action on March 24, 1982 naming Renee Lawson, James Wiggins in his individual and official capacities, John Doe in his official capacity, and the City of Birmingham as defendants. This court granted the City of Birmingham's Motion to Dismiss on May 20, 1982. On October 8, 1982 this court denied defendant Wiggins' Motion to Abstain or for a Stay of the proceedings in this court while a similar suit proceeds in state court. This court has denied Wiggins' and Ms. Lawson's Motions to Dismiss on May 20, 1982 and June 25, 1982, respectively. By direction of the pretrial order, the fictitious party (John Doe) named in the original complaint was dropped from the style of the case.

Plaintiff maintains that he was a victim of a false arrest and malicious prosecution as a result of a conspiracy engaged in by the defendants under color of state law. The issue before this court on the defendants' motions for summary judgment is:

> Does the record before this court present a factual dispute as to whether Wiggins was, at any time pertinent to this case, acting under color of state law?

██ Of course, this court must view the evidence and all factual inferences therefrom in the light most favorable to the party(s) opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). All reasonable doubts about the facts must be resolved in favor of the non-movant. *Casey Enterprises v. American Hardware Mutual Ins. Co.,*

liability under § 1983 for false arrest or violation of the party's civil rights. *See Anderson v. Reynolds,* 476 F.2d 665, 667 (10th Cir.1973); and *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Thus, John

Doe (Officer Edmondson) has been dropped from the complaint. Applying the same principle, the arrest itself cannot afford the plaintiff a right of action under § 1983 against Wiggins even if he did act under color of state law.

655 F.2d 598 (5th Cir.1981). *If the record presents factual issues, the* court must not decide them. *E.D.F. v. Marsh,* 651 F.2d 983 (5th Cir.1981). Even if the facts are undisputed, if reasonable minds might differ on the inferences arising from the undisputed facts, then summary judgment should be denied. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026 (5th Cir.1982).

 Plaintiff makes the conclusory allegation that Wiggins has at all times pertinent to this case acted "under the color of [his] official capacity" and under color of state law. What facts are before this court from which the inferences may reasonably be drawn that Wiggins acted under color of state law? Answer: Wiggins is a police officer. This court must look to the decisions of other courts for guidance in this matter.

In *Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir.1980), the Sixth Circuit reversed a judgment notwithstanding the verdict entered by the district court in a § 1983 action. The district court had concluded that no evidence was in the record to support the jury's conclusion that when "Sampley, a police officer, shot Layne he was acting under color of state law, a jurisdictional requirement." The district court found insufficient the only evidence arguably supportive of the "under color of law" theory which was that animosity between Sampley and Layne arose from the former's performance of police duties and that the weapon was one Sampley used to perform his official duties.

The Sixth Circuit reversed the district court with the following discussion:

It is clear that whether or not a police officer is off-duty does not resolve the question of whether he or she acted under color of state law. Rather, it is necessary to scrutinize the nature of the act. Although in certain cases, it is possible to determine the question whether a person acted under color of state law as a matter of law, there may remain in some instances "unanswered questions of fact regarding the proper characterization of the actions" for the jury to decide.

In this case, the trial judge fully instructed the jury of the meaning of color of law and related issues. The fact that Sampley had authority to carry the weapon only because he was a police officer, that the argument's genesis was unquestionably in the performance of police duties, and that the threat was received through a police agency raised a question for the jury whether Sampley was acting under color of state law. When this is added to other facts such as that Layne found Sampley with a revolver in the company of police officers and did not know he was on vacation, it appears that the jury's verdict is supported by evidence in the record and should not have been set aside.

627 F.2d at 13 (citations omitted). Before discussing other case authority, this court points out that most of the facts present in *Layne,* other than the defendant's being a police officer by occupation, are not alleged in the instant case.

In *Traver v. Meshriy,* 627 F.2d 934 (9th Cir.1980), the Ninth Circuit held that an off-duty policeman was acting under color of state law when he was working as a security guard in a bank and apprehended a bank customer at the direction of a bank teller. The bank's patron was disgruntled after having difficulty withdrawing funds from the bank and walked away from the teller's station. When he did, the teller hollered at Gibson, the off-duty policeman, to "Stop that man," and Gibson did "intercept" the plaintiff. Gibson showed his police identification card to the plaintiff and then realized, after the plaintiff had stopped, that he had left his gun at the teller's station and should retrieve it. Gibson went to get his gun and returned holding the gun in his hand although it was not aimed or cocked. In concluding that Gibson acted under color of state law, the Ninth Circuit said:

At the outset we reject the appellants' contention that there was insufficient state involvement in Gibson's actions to render them "under color of state law."

42 U.S.C. § 1983. Gibson himself testified that he responded to Meshriy's call as a police officer rather than as a bank employee. Furthermore, it was established at trial that using off-duty police officers as "security tellers" at the bank was part of a police department "secondary hiring" program, and that the police department selected the officers for the program. An officer who had been instrumental in establishing the program testified that if an officer believed a crime had been committed, or was directed by a bank officer to stop an individual, his or her primary duty was to the department, not to the bank, Gibson flashed his police identification at Traver, moreover, and introduced himself as a police officer before instructing Traver to sit down on the platform. All these indicia of state action compel the conclusion that Gibson was acting "under color of state law" when he responded to Meshriy's call for help.

627 F.2d at 938. Again, the facts of this case involving an off-duty policeman are very different from the allegations in the instant case.

The Ninth Circuit cited and distinguished the *Traver* decision in *United States v. McGreevy*, 652 F.2d 849 (9th Cir.1981), when it held that an off-duty policeman who *conducted a search* in the performance of an unrelated job was not acting under color of state law. The court noted that the officer "did not hold his Federal Express position because he was a police officer. He carefully separated the two jobs. He knew of no understanding between Federal Express and the DEA for the disposal of contraband." Similarly, in the instant case, no evidence is before the court which suggests a relation between Wiggins' performance of his police duties and the assistance he allegedly gave to Ms. Lawson in deciding to seek the arrest of Mr. Lawson.

A conclusion similar to that in *Traver* was reached in *Davis v. Murphy*, 559 F.2d 1098 (7th Cir.1977), in which the Seventh Circuit stated:

Although Judge Gordon had no problem with the color of law requirement of Section 1983, defendants challenge this element, saying the police officer defendants were off duty and not in uniform. The evidence disclosed that when they exited their car, Dennis Murphy and Cameron immediately identified themselves as police officers. They were carrying their badges and guns and were on duty under regulations of the Milwaukee Police Department "to be always subject to duty * * *." Plaintiffs have sufficiently shown that these defendants were acting under color of law.

559 F.2d at 1101. In *Davis* the off-duty policemen identified themselves as policemen and had their guns and badges. These facts are not alleged in the instant case.

A Fourth Circuit case, *Robinson v. Davis*, 447 F.2d 753 (4th Cir.), *cert. denied*, 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972), held that city police officers, who serve in a part-time capacity as security officers at a private college, were not acting under color of state law when they summoned students to a meeting with the college administration. The court decision seemed based on the fact that the students knew the policemen were fellow students acting in their part-time capacity as police officers. The court said that "It is plain that a state officer is not necessarily acting in his official capacity merely because he is clothed in his official garb. . . ." 447 F.2d at 759.

In *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1944), the Supreme Court held that certain police officers were acting "under color of law" within the meaning of § 20 of the Criminal Code. The Court said:

We are not dealing here with a case where an officer not authorized to act nevertheless takes action. Here the state officers were authorized to make an arrest and to take such steps as were necessary to make the arrest effective. They acted without authority only in the sense that they used excessive force in making the arrest effective. *It is clear that un-*

der "color" of law means under "pretense" of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words "under color of any law" were hardly apt words to express the idea.

325 U.S. at 111, 65 S.Ct. at 1040 (emphasis added). Earlier in *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1940), the Supreme Court, again in reference to § 20, said: "Misuse of power, possessed *by virtue of state law* and made possible *only* because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (emphasis added.) Subsequently, in *Reitman v. Mulkey,* 387 U.S. 369, 378, 87 S.Ct. 1627, 1632, 18 L.Ed.2d 830 (1966), the Court said "This court has never attempted the 'impossible task' of formulating an infallible test for determining whether the State 'in any of its manifestations' has become significantly involved in private discrimination. 'Only by sifting facts and weighing circumstances' on a case-by-case basis can a 'nonobvious involvement of the State in private conduct be attributed its true significance.' " 387 U.S. at 378, 87 S.Ct. at 1632 (*citing Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1960)). Although this general principle is intended for use in the context of appellate review, it has application at this level as well. In many cases, however, this court must evaluate the facts in the record to make decisions on Motions for Summary Judgment, Directed Verdict, and Judgments Notwithstanding the Verdict, if such motions are made. Despite the need for records produced in trial to facilitate case by case determinations at the appellate level, the issue at this level is whether a genuine issue of material fact exists which should be presented to a jury.

All of the above-cited state action decisions involve appellate review of records produced in trial. Obviously, however, this court must apply these legal principles to the total pre-trial record before the court in this case.

A Seventh Circuit decision, *Grow v. Fisher,* 523 F.2d 875 (7th Cir.1975), upheld the dismissal of a § 1983 claim in which private individuals were alleged to have acted under color of state law by complaining and being witnesses in a criminal prosecution. The plaintiff claimed damages for false arrest and malicious prosecution. The Seventh Circuit concluded:

> There is no allegation to support a basis for a claim that the individual defendants had any control over the prosecution of the case against Grow or the failure to prosecute the action in which he was a complainant. That control was vested by law in the prosecuting official. The mere fact that the individual defendants were complainants and witnesses in action which itself was prosecuted under color of law does not make their complaining or testifying other than what it was, *i.e.,* the action of private persons not acting under color of law.

523 F.2d at 879. The significance of *Grow* is that in order to find state action for jurisdictional purposes under § 1983 in the instant case, the actions must be those of Officer Wiggins or Renee Lawson and not the Magistrate, the District Attorney or the arresting officer. Obviously, in this case the actions under color of law, if any there be, must be those of Officer Wiggins.

In the instant case there is no evidence before the court to support the allegation that James Wiggins acted under color of state law prior to the time of the arrest. The relation between Ms. Lawson and James Wiggins is characterized by the plaintiff as a "romantic liaison." There is no evidence that, prior to the arrest, Wiggins confronted Ms. Lawson in an effort to exert authority bestowed upon him as a police officer by state law. Prior to the arrest, James Wiggins made no "pretense" of having any special authority whatsoever by virtue of state law. Similarly, no evidence is before the court that Wiggins

made any pretense of any special authority in obtaining the warrant. As indicated by the case authorities discussed above, police officers may act as private individuals just as any other individual may, and such individual actions do not fall within the coverage of § 1983.

The court must look to the officer's actions to determine whether the actions were under color of state law. Officer Wiggins is alleged to have conspired under color of state law with Ms. Lawson. What evidence is before this court to support this allegation or from which an inference may reasonably be drawn that Wiggins acted under color of law? Wiggins was not, as a matter of law, privy to special information concerning the right to obtain a warrant nor was he accorded peculiar *rights* to counsel private citizens who were alleged victims of criminal behavior. Any other individual would have the same right (and many would have the same information) to counsel a friend on what actions should be taken when one is believed to be a victim of crime. Any individual could advise a purported criminal victim to bring charges and if the elements of a tort (*e.g.*, false arrest) were satisfied then the arrested party would have a cause of action under state law. The same holds true for a police officer who allegedly acts in a private, personal capacity rather than on behalf of the state. There is no evidence in the instant case to raise even an inference that in the course of Ms. Lawson's acquiring information about a possible burglary and providing that information to the Magistrate and the District Attorney that Wiggins acted under color of state law.

The Motions for Summary Judgment are due to be granted.

An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

## FINAL JUDGMENT

In accordance with a Memorandum Opinion contemporaneously entered herewith, the Motions for Summary Judgment filed by defendants, James Wiggins and Renee Lawson, are GRANTED. The complaint is DISMISSED, with prejudice. Costs are assessed against the plaintiff for which let execution issue.