Joel MANNING, Plaintiff,

v.

Michael L. JONES, Rockie McClain, and Steven D. Banks, Defendants.

No. IP 85–1767–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 16, 1988.

Michael K. Sutherlin, Indianapolis, Ind., for plaintiff.

John C. Ruckelshaus, Indianapolis, Ind., for defendants.

## MEMORANDUM DECISION

NOLAND, District Judge.

This cause came before the Court for trial on June 8 and 9, 1988. The Court, having heard the evidence presented and the arguments of counsel, and having reviewed the parties' memoranda, and being duly advised in the premises hereby issues this memorandum decision. This decision is entered in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, which allows findings of fact and conclusions of law to appear in a memorandum of decision filed by the Court.

### I.

The facts established by the evidence presented by the parties are as follows. The plaintiff was a resident of Anderson, Indiana. On January 26, 1984 he was a passenger in a Dodge Charger automobile being driven by his wife, Tamara Manning. (The Mannings have since divorced.) At some time beyond 8:30 p.m., the plaintiff and his wife were traveling north on Interstate 69, having left a shopping center in the Castleton area of Indianapolis.

The three defendants were veteran employees of the Indiana State Police, each having served more than 10 years with the department. They were friends who worked and socialized together often. On January 26, 1984 the defendants had planned a weekend ski trip to Michigan. Though originally scheduled to leave Indianapolis the next day, January 27, they changed their plans and decided to leave on January 26. On that evening they met at defendant Banks' apartment. At all times relevant to that evening, the defendants were off duty, not engaged in any investigation or police work, and had received authorization to consider themselves on vacation. The defendants were dressed in civilian clothes. Because their equipment for the trip would not fit in the vehicle they expected to use, they decided to travel in a Buick Regal automobile. The Buick was an undercover police vehicle issued to defendant McClain but registered to an undercover name. It contained no markings, flashing lights, etc. which would visibly identify it as a police vehicle. There was a police radio hidden in the glove compartment. They left for the ski trip with defendant McClain driving, defendant Jones in the front seat on the passenger side, and defendant Banks in the rear seat. Thus both the plaintiff and the defendants were traveling north on Interstate 69 shortly after 8:30 p.m.

As the plaintiff's car was traveling in the left or passing lane, the defendants' car approached the plaintiff's car from behind, coming up in the right or driving lane. They proceeded side by side for approximately four to five miles, engaging in "challenging" or street racing. Eventually the plaintiff instructed his wife to "Blow their doors off." She increased her speed and pulled far in front of the defendants. Then she changed from the passing lane

into the driving lane, so that the defendants were directly behind her. The defendants' car flashed its bright headlights and pulled over onto the berm or shoulder of the road. The plaintiff interpreted this to mean that the defendants might be having car trouble. In the "spirit of car-racers," the plaintiff told his wife to pull over, to determine if they could assist the defendants rather than leave them potentially stranded. The two cars slowed, and the defendants' car rolled up to a position approximately two to three car lengths behind the plaintiff's car.

The defendant McClain removed from under the driver's seat a weapon commonly known as a blackjack, a narrow leather strip, weighted on one end with a metal type substance, usually held in the hand by a wrist strap and swung upon the intended person or target. McClain exited his vehicle with blackjack in hand, and he testified that his frame of mind was not hostile but reactionary and ready to fight. The plaintiff exited his vehicle from the passenger side and the two men approached each other in the space between the two cars. The plaintiff asked McClain if he was "broken down."

As the plaintiff and McClain encountered each other, there ensued a scuffle. McClain hit the plaintiff with the blackjack at least once in the ribs, and then in the head and face. Thereafter the plaintiff momentarily put McClain in a "head lock" and attempted to choke him. McClain pushed the plaintiff backward onto the trunk of the Charger. By this time the plaintiff's wife had exited their vehicle and defendant Jones had left the defendants' vehicle. Tamara Manning grabbed Jones and told him to "leave us alone." Mrs. Manning grabbed the back of McClain and attempted to pull him off her husband. Jones separated McClain and the plaintiff. Defendant Banks exited the police vehicle, but by the time he approached the other individuals, the altercation had ended. It lasted an estimated 20 to 30 seconds. Both defendant Jones and defendant McClain testified they saw blood on the plaintiff's cheek and clothing. The defendants returned to their vehicle, and the plaintiff followed them, stating that he would have them charged. The plaintiff walked to the back of the defendants' vehicle and noted the license plate number as the defendants drove away.

During this incident, none of the defendants ever identified himself as a police officer. No defendant showed a badge or other piece of police identification. No defendant drew a firearm or produced handcuffs. The defendants did not "stop" the plaintiff and his wife in the sense of a police custodial action, and the defendants did not stop, detain or question the plaintiff and his wife in the line of duty or scope of employment as police officers. No defendant placed the plaintiff or his wife under arrest; the defendants testified they never contemplated doing so. In no manner did any defendant refer to his employment as a police officer. The plaintiff and his wife testified that during the evening in question, they did not know or suspect that the defendants were police officers.

After the defendants left the scene, they returned to Indianapolis because defendant McClain was too agitated or upset to continue the trip. Defendants Banks and McClain stayed the night at Banks' apartment. The defendants went on the ski trip the next day.

After the defendants left the scene, the plaintiff and his wife attempted to follow them but could not find them. They drove to the Pendleton State Police Post. The plaintiff estimated fifteen minutes elapsed from the time of the altercation to their arrival at the post. While there he and his wife gave their statements to trooper Annette Biscuso. She testified that the plaintiff was coherent and answered questions put to him, that she took photographs of both the plaintiff and his wife, that she advised them to take their own photographs as well, that she wrote a case report on the incident, and that at some point between midnight and 8:00 a.m. the next morning, the state police determined to whom the Buick automobile was registered and assigned.

After leaving the post, the plaintiff and his wife went to their home, where they took more photographs. Next they went to a hospital, where the plaintiff was found to have lacerations, sore ribs, nausea, pain and discomfort. He received some stitches and was released that evening with instructions to continue to observe his own condition for any possible complications from his injuries.

## II.

■ The first issue is whether the plaintiff has sustained his burden of persuasion on his 42 U.S.C. § 1983 claim. The Supreme Court has defined the elements necessary to recover under § 1983 as follows:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970) (citations omitted). Further, the Supreme Court has recently observed

The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law".... To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor".... It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.... Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.

West v. Atkins, —— U.S. ——, —— – ——, 108 S.Ct. 2250, 2255–2256, 101 L.Ed.2d 40 (1988) (citations omitted).

The plaintiff in this case claims that the defendants acted under color of state law because they carried police identification and weapons, because they were in an undercover police vehicle, and because "in Indiana as well as in many other jurisdiction[s], police officers are deemed to be on duty at all times, 24 hours a day, and subject to departmental rules and regulations." Plaintiff's Post–Trial Memorandum of Law at 7. However, the plaintiff has cited no case wherein the facts of this case have been found to constitute action under color of state law. The plaintiff's most analogous case is Davis v. Murphy, 559 F.2d 1098 (7th Cir.1977), in which the panel held that off-duty, non-uniformed police officers who approached the plaintiff's car, identified themselves as police officers, displayed badges and weapons, and caused the plaintiffs to be arrested acted under color of state law for § 1983 purposes. Davis is readily distinguishable from the case at bar because the defendants in this case did not identify themselves as police officers, did not display badges or any type of police identification, and did not cause the plaintiff to be arrested.

In fact the greater weight of the cases supports the conclusion that the defendants in this case were not acting under color of state law. In Delcambre v. Delcambre, a woman sued her brother-in-law, the local police chief, under § 1983 for assaulting her on police station premises while he was on duty. However, because the district court correctly found "that the altercation arose out of an argument over family and political matters and that Amy Delcambre was neither arrested nor threatened with arrest," the Fifth Circuit affirmed dismissal, noting "it is clear that [Chief Delcambre] was not acting under color of law as required for liability under [§ 1983]." 635 F.2d 407, 408 (5th Cir.1981). Similarly, in Bonsignore v. City of New York, the Second Circuit found that an off-duty police officer who shot his wife did not act under

color of state law because he did not act "in the performance of any actual or pretended duty" but "in the ambit of [his] personal pursuits." 683 F.2d 635, 638–39 (2d Cir.1982) (citations omitted). Further, in *Warner v. Croft,* the district court commented on the "under color of state law" issue as follows:

> The cases are clear that not all acts of a State official are under color of state law. It is the nature of an act performed by a State official and not merely his status as a state official which is determinative of whether his act is under color of State law.... Not all acts of a police officer are under color of State law.... "If [a police officer] were acting wholly as a private citizen in this alleged assault, and did not use the 'pretense' of his office's legal authority, ... or act under the authority of a 'policeman's badge,' ... the Civil Rights Act would not provide plaintiff with a vehicle for recovery...."

406 F.Supp. 717, 721 (W.D.Okla.1975). Finally, it has also been written that an assault is not "automatically transmuted into a violation of Constitutional rights simply because the guilty party is a policeman. Obviously a policeman can act in a private, as well as a professional capacity." *Nugent v. Sheppard,* 318 F.Supp. 314, 316 (N.D.Ind.1970). In analyzing a police officer's conduct, the district court in *Nugent* found the test to be whether an assault occurs "in the line of duty." *Id.*

Upon careful review of the facts in this case and application of the principles of law as discussed above, the Court concludes that the plaintiff has failed to sustain his burden of persuasion on the issue of whether the defendants acted under color of state law. The plaintiff concedes, and the evidence shows, that the defendants did not identify themselves as police officers at any time during the incident in question. At no time during the incident was the plaintiff aware that the defendants were police officers. The defendants did not "stop" the plaintiff in a custodial sense. The defendants did not detain or question the plaintiff in the line of duty or scope of employment as police officers. The defend-

ants did not draw a firearm or arrest the plaintiff. The defendants were not engaged in any investigation or any aspect of the traditional public safety functions of police work.

Rather, the evidence shows that in all respects the defendants acted as private citizens, never invoking the power of their state office nor their police persona. The defendants did not act "clothed with the authority of state law [or] exercising responsibilities pursuant to state law." *West, supra.* The defendants did not act under color of state law because the altercation in this case arose out of personal matters and no arrest was made. *Delcambre, supra.* The defendants also did not act under color of state law because they did not act in the performance of their duties but acted within "the ambit of their personal pursuits." *Bonsignore, supra.* The nature of the defendants' actions were personal, and they were clearly acting as private citizens. *Warner, supra.* Finally, it is also clear from the above discussion that the defendants were not acting in the line of duty. *Nugent, supra.*

■ The Court finds that any subsequent inquiries at a state police post about the incident by any defendant, and any disciplinary action taken against them by the state police, are insufficient to establish state action. Any disciplinary proceedings arose out of violations of a code applying to police officers' conduct. The internal rules and regulations of the state police may hold police officers to particular standards of conduct relating to both on- and off-duty. However, when a police officer acts as a private individual, without invoking the authority of his position, his acts are not within the purview of § 1983, and any discipline imposed later on the officer for such act does not clothe the act with "color of state law" for § 1983 purposes. Notwithstanding the plaintiff's argument that the defendants are police officers "24 hours a day," the Court finds that the defendants' actions under the facts of this case were solely as private individuals, and as such do not constitute action under color of state law as required by § 1983.

## III.

■ The plaintiff also invokes 42 U.S.C. §§ 1985, 1986, and 1988 as a basis for recovery. The only reasonable claim the plaintiff may make for recovery under § 1985 is subsection (3). Claims under subsection (3) must indicate a racial or otherwise class-based invidiously discriminatory animus behind the conspiracy alleged. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). As the plaintiff has failed to produce any evidence of such animus, his § 1985 claim must fail. As the plaintiff has shown no conspiracy under § 1985, his § 1986 claim for neglecting or refusing to prevent a § 1985 wrong must also fail. Finally, as plaintiff's §§ 1983, 1985 and 1986 claims have all failed, the Court finds he is not entitled to recover attorneys' fees under § 1988.

## IV.

■ There remains the plaintiff's pendent state law claim for battery. As the Court has determined that the plaintiff has failed on all of his claims which properly invoked federal jurisdiction, the Court hereby exercises its discretion to decline to decide the pendent state law battery claim, *see Delcambre, supra.* Therefore, the Court makes no finding with regard to the battery claim, and specifically will dismiss or transfer such claim, without prejudice, subject to the following considerations.

The Court concludes that the plaintiff commenced his action in a timely manner and that the plaintiff failed on his federal claims, such failure not due to negligence in the prosecution, abatement, death of a party, or arrest or reversal on appeal. Therefore, under Indiana law, the plaintiff may bring a new action for recovery under state law theories based on the incident in this case within five years after the determination of failure. I.C. 34-1-2-8. This applies if the first suit is in federal court and the subsequent suit may be in state court. *See Huffman v. Anderson*, 118 F.R.D. 97 (N.D.Ind.1987); *Abele v. Dougherty Overseas, Inc.*, 192 F.Supp. 955 (N.D. Ind.1961); *Eves v. Ford Motor Co.*, 152 Ind.App. 34, 281 N.E.2d 826 (1972); *Ware*

*v. Waterman*, 146 Ind.App. 237, 253 N.E. 2d 708 (1969).

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Clerk of this Court shall withhold the entry of judgment in this action until further notice from the Court. IT IS FURTHER ORDERED, ADJUDGED and DECREED that the plaintiff shall have thirty (30) days from the date of this decision to request this Court to transfer the remaining state law claims in this case to a state court of competent jurisdiction. If the plaintiff fails to do so, the plaintiff's pendent state law claims will be dismissed without prejudice upon the entry of judgment for each of the defendants on the plaintiff's federal jurisdictional claims.

### ENTRY OF JUDGMENT AND ORDER TO TRANSFER

This cause is before the Court for the entry of judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and subsequent to the Court's Memorandum Decision of August 16, 1988.

Whereupon the Court, having DECIDED in such Memorandum Decision that each of the defendants should receive judgment on the plaintiff's federal law claims, and being duly advised in the premises, hereby ENTERS JUDGMENT for each of the defendants and against the plaintiff on the plaintiff's federal law claims.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the plaintiff take nothing by way of his complaint on his federal law claims, that JUDGMENT be entered herein in favor of each of the defendants on such claims, and that costs be borne accordingly.

As the plaintiff has requested transfer of his remaining pendent state law claims to a state court of competent jurisdiction, pursuant to the Court's Memorandum Decision of August 16, 1988, IT IS FURTHER ORDERED that the Clerk of this Court is directed to maintain this record in its entirety with the records of this Court, and is further directed to transfer the plaintiff's remaining pendent state law claims to the Madison Circuit Court, State of Indiana, by

filing copies of the entire record of this case with said Court.