Michael **MYATT**, Plaintiff,

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 90 C 3991.**

United States District Court, N.D. Illinois, E.D.

Nov. 24, 1992.

Jeffrey H. Haas, G. Flint Taylor, Jr., Janine L. Hoft, Erica Lassiter Thompson, Chicago, IL, for plaintiff.

Gregory J. Wojkowski, Patrick J. Rocks, Jr., Donald Raymond Zoufal, Kelly Raymond Welsh, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendant City of Chicago, Ill.

Margaret Schneider Garvey, Michael E. Shabat, Freeborn & Peters, Christine Holtz, Sharon Ladawn Tiller, Chicago, IL, for defendant Board of Trustees of Community College Dist. 508.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Michael Myatt ("Myatt") brings this action against the City of Chicago ("City"), the Board of Trustees of Community College District No. 508 ("Board") and individual defendants Clarence Lewis ("Lewis") and Ronald McInerney ("McInerney") for violations of 42 U.S.C. § 1983, assault and battery, and various pendent state claims. Although this action is ready for trial, there are several preliminary motions before this Court. The City, later joined by the Board and the individual defendants, has moved to bifurcate the proceedings.[1] In his response to the bifurcation motion, plaintiff offered to proceed on only the *Monell* "code of silence" claim against the City if the trial were not bifurcated.[2] The City then moved for summary judgment on the "code of silence" claim.[3] Additionally, the City also moved to strike certain paragraphs from plaintiff's 12(n) statement of additional facts. Finally, Lewis, McInerney, and the Board request that this court, pursuant to Federal Rule of Civil Procedure 56(c), grant summary judgment in their favor on Counts II, III, and VI of Myatt's complaint in their entirety, and on Count V as it applies to McInerney. For the reasons set forth below, we grant the defendants' motion for bifurcation, deny the City's motion for summary judgment on the "code of silence" claim, grant summary judgment for the individual defendants and the Board on Counts II and VI, and deny summary judgment on Counts III and V.

## I. SUMMARY JUDGMENT STANDARD

██ Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In determining whether to grant summary judgment, a court must view the record and all possible inferences in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir.1988). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. FACTUAL BACKGROUND

Lewis and McInerney are Chicago police officers employed by the Board as security officers at Wright College ("Wright"), where Myatt is a student. Both individual defendants knew that the other was a Chicago police officer. On October 11, 1989, Lewis and McInerney were on duty as security officers at Wright. Lewis had been recommended for the security job by his supervi-

---

1. On July 12, 1991, the City filed a motion for bifurcation of the individual liability and the *Monell* policy claims. On August 28, 1991, the Court denied the City's motion for bifurcation "at this time." On October 8, 1991, the Court indicated that it would reconsider the bifurcation issue.

2. Plaintiff's additional claims against the City are a *Monell* failure to discipline and control claim and a state law *respondeat superior* claim.

3. Defendants argue that the plaintiff's "conditional bifurcation response should be treated as a waiver" of plaintiffs other claims against the City. Defendants' Joint Reply Memorandum in Support of Their Motions to Bifurcate at p. 3. However, since plaintiff has not indicated an intent to dismiss these claims if the trial is bifurcated, the City's motion will be treated as a motion for summary judgment on the "code of silence" claim.

sor. As college security officers who were also police officers, the two men were authorized to carry weapons and make arrests on college property.[4]

Sometime that afternoon, Myatt attended a basketball practice. After the practice, he was with a group near the men's locker room. At the same time, Lewis and McInerney were investigating a complaint of excessive noise in the hallway. Seeing the group near the locker room, the officers approached and asked the individuals to produce college identification cards. Lewis took the cards, told the students to wait for him outside of the security office, and went upstairs to talk to the basketball coach.

Instead of waiting near the security office, Myatt and several others went upstairs to complain to the basketball coach that they were being harassed by security officers. The coach, Dennis Lewis, told the men to go home, indicating that he would take care of the matter the next day. Myatt, however, needed his I.D. card in order to go to the library and work on a term paper. Instead of going home, then, Myatt left the coach's office and followed Lewis and McInerney into the gymnasium.

Once inside the gym, Myatt asked Lewis and McInerney for his I.D. back. Hearing Myatt, Lewis turned around to face him and words were exchanged. The officer then reached out to grab Myatt, who pushed his hands away. Myatt then struck Lewis in the chest with a soft blow.

A struggle, witnessed by other individuals in the gym, ensued between Lewis and Myatt. At one point, Lewis succeeded in throwing Myatt to the ground and pointed a gun at his head. Additionally, Lewis allegedly slammed plaintiff repeatedly into some pull-out bleachers. At some point during the incident, Lewis told Myatt that he was a police officer and that Myatt was under arrest.[5] McInerney did not touch Myatt at any point during this altercation. McInerney did call 911, identify himself as an off-duty police officer, and request that a technical unit and a wagon be sent to Wright. Requesting a technical unit and a wagon constitutes police department procedure. *See* Police Department General Order 84-3.

After the altercation subsided, Lewis took Myatt to the college security office. Here, Myatt alleges that Lewis hit him with a gun on the back of his head, hit him in the chest and face, kicked him, and stomped on his stomach and shoulder.

Lewis signed state criminal complaints charging Myatt with disorderly conduct and battery. Later, Lewis also charged Myatt with criminal damage to property for damages sustained to Lewis' clothing. In April of 1990, Myatt went to trial on the criminal charges. On April 5, 1990, he moved for a directed verdict on the criminal damage charge. The state court granted the motion.

The court, however, denied Myatt's proposal to instruct the jury on self-defense. After oral argument by the attorneys, the court ruled that

> [t]here was a lawful arrest by the person having authority to make that arrest. This Court does not believe self-defense applies to a lawful arrest. Even though there is not a charge of resisting arrest, once a person is informed of arrest, that person has no right to try to go against that arrest by in fact physical confrontation with the arresting officer.

Criminal Trial Transcript, April 4, 1990. The next day, a jury found Myatt not guilty of the battery charge.

## III. DISCUSSION

### A. *Bifurcation*

The Federal Rules of Civil Procedure provide that the court "in furtherance of conve-

---

4. The City Colleges of Chicago have a written policy which states that only "security officers who are also off-duty, sworn police officers have the authority to make arrests." *See* City Colleges Manual, III A; Lewis Dep. at pp. 123–25.

5. Although the timing of this statement is disputed, the City concedes that "it is not contested that some time during the altercation between plaintiff and defendant Lewis, Lewis states that he told plaintiff he was a police officer." City's Response to Certain of Plaintiff's 12(m) Statement of Additional Facts at ¶ 32. We note, however, that McInerney made a statement to the Office of Professional Standards ("OPS") and testified in his deposition that at the beginning of the incident Lewis identified himself to Myatt as a police officer and placed him under arrest. McInerney Dep. at pp. 42–45.

nience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue." Fed. R.Civ.P. 42(b). In addition, Local Civil Rule 21 states that a separate trial may be ordered "where the issue of liability may be adjudicated as a prerequisite to the determination of any or all other issues."

■ The goals of convenience, expedition and economy are furthered where a separate trial "disposes of one charge or establishes a necessary element of a second charge." *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989) (court ordered separate trials of the claims against individual police defendants and the § 1983 claim against the municipality). In *Sanchez v. City of Riverside*, 596 F.Supp. 193, 194 (C.D.Cal.1984), the court granted the defendants' motion to bifurcate a *Monell* claim from the trial of an individual police officer's liability. According to the court, "[t]he motion was based on the ground that establishing (and defending against) the City's liability under *Monell* [ ] would be a time-consuming exercise which would, in all probability, be rendered moot by the resolution of plaintiffs' claims against the individual police officer." *Id.*[6] Here, a separate trial on the liability of the individual defendants will either dispose of, or establish a necessary element of, the City's liability under the *Monell* "code of silence" claim. If the individual officers are not held liable, the City cannot be held liable under a *Monell* claim. *City of Los Angeles v. Heller*, 475

U.S. 796, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).

■ In deciding whether to order separate trials, we will consider whether the evidence required for each issue overlaps. *Ismail*, 706 F.Supp. at 251. In *Ismail*, the court ordered a separate trial of the *Monell* claim against the city, stating that "the *Monell* claim would involve the introduction of quite broad evidence unnecessary to claims to be heard in the first trial." *Id.* Similarly, in this case, different evidence is required to prove the individual defendants' liability and the City's liability under *Monell*. In fact, the parties agreed to, and were able to, separate out the evidence relating to the policy claim against the City at the October 25, 1991 hearing before Magistrate Judge Rosemond. Moreover, Myatt himself recognized that separate evidence is required to show that the City has a "code of silence" policy, estimating that it would take him one to two trial days to put on proof that such a policy exists. Plaintiff's Response to Defendant's Motion for Bifurcation at p. 1.[7] Bifurcation, then, would further the goal of judicial economy and expediency.[8] Accordingly, we grant the defendants' combined motion for bifurcation.[9]

### B. The "Code of Silence" Claim

■ A municipality can only be found liable under § 1983 where its policies are "'the moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Thus, a city policy resulting in deprivation of constitutional rights can only "yield liability against a municipality where that city's [policy] reflects deliberate

---

6. Nor is it particularly uncommon for courts to bifurcate *Monell* claims from claims brought against the individual employees. *See, e.g., Ricciuti v. New York City Transit Authority, et al.*, 796 F.Supp. 84 (S.D.N.Y.1992); *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *United States of America v. Hughes Aircraft Co.*, 1992 U.S.Dist. LEXIS (C.D.Cal.1992); *Fisher v. City of New York, et al.*, 1992 WL 77606, 1992 U.S.Dist. LEXIS 3436 (S.D.N.Y.1992).

7. For their part, the City estimates that it would take an additional two to three days to respond to the plaintiff's policy claim. Defendants' Joint Reply in Support of Their Motions for Bifurcation at pp. 4–5.

8. Bifurcation would also avoid prejudicing the defendants. In *Ismail*, the court noted that "there is a danger that evidence admissible on the issues relating to conduct by the City or [the individual policy officer] will 'contaminate' the mind of the finder of fact in its consideration of the liability of the other defendant." *Ismail*, 706 F.Supp. at 254.

9. In the interest of judicial economy, if the individual defendants are held liable, the trial will proceed against the City on the *Monell* policy claims.

indifference to the constitutional rights of its inhabitants." *Id.* at 392, 109 S.Ct. at 1206. The City argues that summary judgment should be granted in its favor because defendants McInerney and Lewis were acting as employees of the Board at the time of the incident, not as employees of the City. If the individual defendants were not acting as City employees at the time, the City contends, then they could not have acted pursuant to a city policy.

While it is helpful, and possibly dispositive, to determine whether the defendants here were acting as employees of the City at the time of the incident, even if defendants were not acting as City employees, municipal policies may still have been the "moving force" behind Myatt's alleged constitutional violations. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir.1990) (court stated that determination that individual defendant did not act under color of state law was not dispositive of municipal liability claim, since plaintiff had alleged a municipal policy which allowed the behavior that deprived him of constitutional rights). That is, even if McInerney and Lewis were not acting as City employees when they allegedly beat and arrested Myatt, if they acted pursuant to the City's alleged "code of silence," that policy can be said to have deprived Myatt of constitutional rights. Accordingly, our task is to ascertain whether the plaintiff has created a triable issue of fact regarding (1) whether the defendants were acting as police officers during the incident,[10] and (2) if not, whether they nonetheless were acting pursuant to a City policy.

In arguing that the individual defendants were not acting as police officers, the City likens this case to *Askew v. Bloemker*, 548 F.2d 673 (7th Cir.1976), in which the Seventh Circuit found that police officers assigned on a full-time basis to a federal agency were not acting under color of state law for purposes of § 1983 liability. The *Askew* court held that, based on the totality of the circumstances, the agents were acting pursuant to federal authority, and not under color of state law, even though they "maintained official links with the [St. Louis Police Department ("SLPD")]."[11] The court reached its decision despite the fact that one of the agents presented his SLPD badge instead of his federal credentials.

The plaintiff, on the other hand, argues that the existence of an employment relationship with the Board is not determinative, and likens this case to *Davis v. Murphy*, 559 F.2d 1098 (7th Cir.1977) and *Traver v. Meshriy*, 627 F.2d 934 (9th Cir.1980). In *Davis*, the court held that off duty police officers were acting under color of state law when they identified themselves as police officers, carried their badges and guns and "were on duty under regulations of the Milwaukee Police Department 'to be always subject to duty.'" *Id.* at 1101. In *Traver*, the court held that an off duty police officer working as a bank "security teller" acted under color of state law in detaining a bank customer where he flashed his police identification at the plaintiff, identified himself as a police officer, and where security teller positions were part of the police department's secondary hiring program.[12] *Traver*, 627 F.2d at 938. Both

---

**10.** If McInerney and Lewis were acting as police officers during the incident, then our inquiry ends, since the City does not argue that acting police officers fail to act pursuant to existing police department policies—in fact, the City acknowledges that "an argument might be made that an inference can be drawn that an employee acting within the scope of his employment acts pursuant to or in furtherance of his employers' policies." Defendant City of Chicago's Reply Memorandum in Support of Its Motion for Summary Judgment at p. 6, fn. 5. The City further concedes that the existence of a "code of silence" police "is clearly contested." City's Reply Memorandum in Support of Its Motion for Summary Judgment at fn. 1.

**11.** The court noted that the "three SLPD-affiliated agents continued to carry their SLPD badges,

remained accountable to SLPD supervisors, and were paid by checks issued by the SLPD." *Askew*, 548 F.2d at 677. However, "they were also provided with official Justice Department credentials, were subject to the immediate control of [the federal agency's] supervisors, were paid out of federal funds ... and were covered under the Federal Employees Compensation Act." *Id.* Moreover, "the actions at issue resulted from a federal investigation, whose purpose was to arrest persons suspected of federal law violations." *Id.*

**12.** The facts in *Traver* indicate additional department involvement, with the police department selecting the officers for the hiring program and instructing the officers that "if an officer believed a crime had been committed, or was directed by

*Traver* and *Davis* support a finding that off duty officers act under color of state law when they respond to situations as police officers, rather than as civilians or security employees.

■ . Here, there is evidence that Lewis identified himself as a Chicago police officer, and carried the weapon he had been authorized to carry as a police officer. In addition, the City had a policy, similar to that in Milwaukee, that police officers are subject to call at any time.[13] Finally, in addition to being recommended for their positions by supervisors in the Chicago police department, McInerney identified himself to 911 as an off-duty police officer, rather than as a security officer, and followed police procedure by requesting a technical unit and a wagon from the police department after Myatt's arrest. McInerney Dep. at p. 67. There is, then, a genuine issue of fact as to whether, under the totality of the circumstances, Lewis and McInerney acted as police officers when they arrested Myatt.[14] Accordingly, we deny summary judgment on Myatt's "code of silence" claim.[15]

### C. *Count II*

■ Count II of plaintiff's complaint charges the individual defendants with malicious prosecution. The common law tort of malicious prosecution, however, does not give rise to a cause of action under 42 U.S.C. § 1983 unless the plaintiff is subject to a deprivation of constitutional magnitude. *Easter House v. Felder*, 910 F.2d 1387, 1408 (7th Cir.1990); *Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir.1985); *Tarkowski v. County of Lake*, 775 F.2d 173 (7th

Cir.1985) (court stated that "there hardly seems a pressing need for such a tort," since the state tort law of malicious prosecution may reach malicious federal litigation). Here, Myatt alleges that the alleged malicious prosecution, as well as false arrest and false imprisonment, deprived him of First, Fourth and Fourteenth Amendment rights. Complaint at ¶ 30.

■ A threshold issue, however, is whether the arrest in question was supported by probable cause. When an arrest is supported by probable cause, the arrestee cannot be said to have suffered a constitutional deprivation. Accordingly, probable cause is an absolute defense to § 1983 claims for malicious prosecution, false arrest, and false imprisonment. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989) ("Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.")

■ Probable cause exists if the facts and circumstances at the time of the arrest support a reasonable belief that an offense has been committed. *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir.1989). Even if the arrestee is later acquitted, reasonable belief that an arrest was lawful will protect an arresting officer. *See Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Olson v. Tyler*, 825 F.2d 1116 (7th Cir.1987). The question before the Court, then, is whether a genuine issue of fact exists as to whether Lewis and McInerney had probable cause to arrest Myatt.

a bank officer to stop an individual, his or her primary duty was to the department, not to the bank.

**13.** While the proposition that Chicago police officers are *on duty* twenty-four hours a day is contested, the City acknowledges that Police Department General Order 89–8, dealing with secondary employment, establishes that "Department members are subject to call at any time for emergencies, special assignments or overtime duty." The General Order further provides that "[t]he duties and obligations of the Chicago Police Department take priority over any other employment," and reminds Department members

"that their primary responsibility is to the Chicago Police Department."

**14.** Although *Davis* and *Traver* involve determinations of whether the defendant acted under color of state law, the same rationale applies in determining whether a defendant acted as a municipal employee. That is, in order to determine whether a defendant police officer acted under color of state law, courts look to see whether the defendant acted in his capacity as a police officer.

**15.** Having ruled on this summary judgment motion, we need not address the City's various motions to strike.

Lewis and McInerney arrested Myatt for committing a battery on Lewis and for violating the City of Chicago disorderly conduct ordinance. A battery occurs when a person "intentionally or knowingly without legal justification and by any means ... (2) makes physical contact of an insulting or provoking nature with an individual." Ill.Rev.Stat. ch. 38, ¶ 12–3(a). Here, it is clear that Myatt struck Lewis in the chest with at least a soft blow. While he contests this fact in his response to defendants' 12(m) statement, Myatt admitted, both at trial and in his deposition, that he struck Lewis in the chest. Criminal Trial Transcript, April 5, 1990 at p. 158; Myatt Deposition at p. 40. No genuine issue, then, remains for the trier of fact on this point.[16]

Nor is there any other issue of material fact. Although there is some dispute as to whether Lewis identified himself as a police officer and placed Myatt under arrest at the beginning of the incident, these are not material facts with respect to the issue of probable cause.[17] Even if Lewis had not already placed him under arrest, the fact that Myatt hit him created probable cause for a battery arrest.

Nor is any dispute over who started the incident material for the limited purpose of determining whether Lewis had probable cause to arrest Myatt. Instead, the specific circumstances surrounding the incident go to whether excessive force was used and/or whether Myatt acted in self-defense. Accordingly, the defendants had probable cause to arrest Myatt for battery.[18]

### D. *Count VI*

 Under Illinois law, as under federal law, the existence of probable cause is an absolute defense to an action for false arrest, false imprisonment, and malicious prosecution. *Mosley v. La Mastus,* 741 F.Supp. 724 (N.D.Ill.1990). The test for determining the existence of probable cause is identical to that used in federal cases. *People v. Stachelek,* 145 Ill.App.3d 391, 398–99, 495 N.E.2d 984, 989, 99 Ill.Dec. 249, 254 (1st Dist.1986). As set forth above, defendant Lewis could reasonably believe that Myatt had committed a battery. Because plaintiff has set forth no genuine issue as to the presence of probable cause for this arrest, summary judgment is appropriate as to the false imprisonment, false arrest, and malicious prosecution claims in Count VI.

### E. *Count III*

 In Count III, Myatt alleges that Lewis and McInerney engaged in a conspiracy to deprive him of his civil rights. A civil conspiracy occurs when two or more persons act in concert to commit an unlawful act, the "principal element of which is an agreement between the parties to 'inflict a wrong against or injury upon another.'" *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). To establish a conspiracy, there must be evidence that the alleged conspirators had a meeting of the minds and that each conspirator understood the general objectives of the scheme and agreed to further the scheme. *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). Because it is often difficult to obtain direct evidence of conspiracy, circumstantial evidence may provide adequate proof of conspiracy. However, the circumstantial evidence must be sufficient to "infer that the alleged conspirators had a 'meeting of the minds' and reached an understanding to achieve the illegal objective." *Means v. City of Chicago,* 535 F.Supp. 455, 463 (N.D.Ill.1982); *Hampton,* 600 F.2d at 622.

 Under § 1983, there is no such thing as inadvertent or negligent participation in a conspiracy. *Jones,* 856 F.2d at

---

16. We also find it probative that the trial judge stated that Myatt's arrest was lawful.

17. Whether he had been told he was under arrest at the time he hit Lewis is an issue with respect to whether Myatt's blow was in self-defense.

18. Because we find that there is no genuine issue regarding the existence of probable cause to arrest Myatt for battery, we need not reach the issue of whether a genuine issue of material fact exists regarding probable cause to arrest Myatt for disorderly conduct. Myatt has not alleged, nor is there evidence to support an inference, that the arrest for the additional charge of disorderly conduct resulted in any incremental increase in his alleged constitutional deprivations. Accordingly, the existence of probable cause for the battery arrest constitutes an absolute defense to the § 1983 claims contained in Count II.

993. Thus, a plaintiff must show that the coconspirators acted either knowingly, or with deliberate, reckless indifference. *Id.*

Here, Myatt has raised a genuine issue of material fact as to whether McInerney recklessly, or with deliberate indifference, participated in a conspiracy to utilize excessive force. First, Myatt has raised a genuine issue of material fact as to whether Lewis used excessive force against him.[19] Testimony of several witnesses indicates that Lewis hit Myatt on the head with his walkie-talkie. *See* Myatt Dep. at 41; Harrell Dep. at 58–59; Mallet Dep. at 42–44; Thornton Dep. at 29. Eyewitness testimony further indicates that Lewis pointed a gun at Myatt's head, threatened to shoot him, and repeatedly slammed him into the bleacher seats. *See* Myatt Dep. at 56–59, 63–65; Harrell Dep. at 69–71, 73, 75–77; Mallet Dep. at 65–67, 69, 72–74; Thornton Dep. at 37, 48–49. Finally, there is evidence that Lewis hit Myatt in the face and chest, kicked him, and stomped on his stomach and shoulder. Myatt Dep. at 74, 80, 82–83; Thornton Dep. at 55–58; Hyde Dep. at 28. · This evidence certainly permits a jury to conclude that Lewis used excessive force against Myatt.

Myatt has also raised a genuine issue of fact with respect to whether McInerney conspired with Lewis to use excessive force. If Lewis used excessive force against Myatt, McInerney had a duty to intervene. However, testimonial evidence indicates that not only did McInerney simply stand ·by and watch the struggle between Lewis and Myatt, he actually told other students in the gym to stay away. McInerney Dep. at 56, 68. Moreover, there is also evidence that, in the middle of the struggle between Lewis and Myatt, McInerney handed Lewis the gun that had fallen from Lewis' ankle holster. Myatt Dep. at 56; Harrell Dep. at 68–69, 81; Mallet Dep. at 61, 64–65; Thornton Dep. at 35, 37; Hyde Dep. at 19. Finally, there is evidence that McInerney was in the room when Lewis hit Myatt with the gun and when

Lewis hit him, kicked him, and stomped on his stomach and shoulder. Myatt Dep. at 71, 83, 114–15, 127. While McInerney offers explanations for his behavior, and claims he was absent during some of the events, the evidence raises an inference that he cooperated with Lewis to use excessive force against Myatt. This inference, in turn, makes summary judgment inappropriate with respect to Count III.

### F. *Count V*

In Count V, Myatt alleges that defendants committed an assault and battery against him. Defendants request summary judgment with respect to the assault and battery claim against McInerney, arguing that McInerney did not touch Myatt.

Under Illinois law, a plaintiff may state a claim for' assault and battery by showing that the defendant incited, aided, or abetted. in the commission of the alleged assault and battery. *Carreon v. Baumann,* 747 F.Supp. 1290, 1291 (N.D.Ill.1990). As discussed above, Myatt has raised a genuine issue as · to whether McInerney aided and abetted Lewis in his alleged assault and battery of Myatt. Accordingly, summary judgment is denied with respect to Count V.

## IV. CONCLUSION

For the foregoing reasons, we grant defendants' motion to bifurcate the *Monell* and individual liability issues at trial. Additionally, we deny defendants' motion for partial summary judgment on the *Monell* claim based on the City's alleged "code of silence." Finally, we grant defendants' motion for summary judgment with respect to Counts II and VI and deny summary judgment with respect to Counts III and V. It is so ordered.

---

**19.** By Fourth Amendment standards, an officer's use of force is unconstitutional if the force used is unreasonable under the circumstances. *Lester v. City of Chicago,* 830 F.2d 706, 709 (7th Cir. 1987) (quoting, *Bell v. Milwaukee,* 746 F.2d 1205, 1278–79 (7th Cir.1984)). The standard requires a balancing of the "nature and quality of the intrusion. on the individual's ·Fourth Amendment interests against the importance of the governmental interests...." *Id.* at 711. Therefore, a constitutional violation giving rise to a § 1983 claim exists if, given the totality of the circumstances, the officer used greater force than necessary to make the arrest. *Id.*