46 F.3d 1142
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LANCER INSURANCE COMPANY, Lancer Management Company, Inc.,
Plaintiffs/Counter-Defendants-Appellants,
v.
D.W. FERGUSON & ASSOCIATES, Douglas W. Ferguson,
Defendants/Counter-Claim Third-Party Plaintiffs/Appellees.
and
Transportation Insurance Brokers, Inc., Third-Party-Defendant
LANCER INSURANCE COMPANY, Lancer Management Company, Inc.,
Plaintiffs-Counter-Defendants
v.
D. W. FERGUSON & ASSOCIATES, Douglas W. Ferguson,
Defendant-Counter-Claim Third-Party Plaintiffs/Appellees
v.
TRANSPORTATION INSURANCE BROKERS, INC.,
Third-Party-Defendant-Appellant.
 Nos. 93-55789, 93-55790.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Oct. 3, 1994.
Decided: Jan. 19, 1995.
 
 1
 Before: Chief Judge WALLACE and REINHARDT, Circuit Judges and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs and counter-defendants Lancer Insurance Co. and Lancer Management Co.,Inc. ("Lancer") and third-party defendant Transportation Insurance Brokers, Inc. ("TIB") appeal from the denial of post trial motions after a jury verdict entered against them and in favor of defendants and cross-plaintiffs D.W. Ferguson & Associates and Douglas W. Ferguson ("Ferguson")[1] in this breach of contract and tortious conduct action.[2] We have jurisdiction pursuant to 28 U.S.C. Sec.1291 and for the reasons set forth below we REVERSE as to Lancer and AFFIRM as to TIB.
 
 
 4
 I. LANCER.
 
 
 5
 A. Standard of Review.
 
 
 6
 Lancer filed a post-trial motion for judgment as a matter of law pursuant to Fed.R.Civ.P.50, or alternatively for a new trial pursuant to Fed.R.Civ.P.59. The district court denied the motion. We review the district court's ruling on a motion made pursuant to Fed.R.Civ.P.50 de novo. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir. 1992), cert. dismissed, 113 S.Ct. 399 (1992). The denial of a motion under Fed.R.Civ.P.50 is reversible error "when it is clear that the evidence and inferences cannot reasonably support judgment in favor of the opposing party." Transgo, Inc. v. AJAC Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985) (discussing the denial of a motion for JNOV -- the term used prior to the 1991 amendment to Rule 50), cert. denied, 474 U.S. 1059 (1986). We review the ruling on a motion for a new trial for abuse of discretion. William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1026 (9th Cir. 1981), cert. denied, 459 U.S. 825 (1982).
 
 
 7
 B. The Litigation Privilege.
 
 
 8
 Under Cal.Civ.Code Sec.47(b) certain communications are privileged. In order for Lancer to avail itself of the privilege, the communications at issue must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants ...; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 786 P.2d 365, 369 (Cal.1990). The litigation privilege, if it applies, is a bar to all of Fergusons' tort claims. The claims for defamation, intentional interference with prospective economic advantage, and intentional infliction of emotional distress all fail if the privilege is applicable to the facts of the present case. Id. at 371.
 
 
 9
 Lancer seeks to cloak two separate classes of communications with the privilege. First, they seek to protect telephone calls from Lancer representatives Bob Riley and Al Sue to Ferguson customers between May 6 and May 8, 1991 informing the customers of the upcoming litigation between the parties and directing the insureds to pay their premiums directly to Lancer. Second, they seek to protect letters which were sent on or about May 16, 1991 to the insureds as follow-ups to the phone calls. The complaint was filed on May 10, 1991.
 
 
 10
 The four Silberg factors clearly apply to both the letter and the phone calls. The phone calls were made a few days before the complaint was filed, and the letters were sent shortly thereafter. See Cayley v. Nunn, 235 Cal. Rptr. 385, 387-88 (Cal. App. 1987) ("The privilege embraces preliminary conversations attendant upon such proceeding so long as they are in some way related to or connected to the pending or contemplated actions"). Both the letter and the phone calls were by the same litigating party and had the object of furthering the litigation by instructing the insureds to send their premiums directly to Lancer thereby attempting to mitigate their damages. Furthermore, it is clear that the communications had some logical relation or connection to the proceeding. Lancer was telling the insureds the basis of their lawsuit. The communications had the object of directing the premium payments to Lancer and away from Ferguson. "Any doubt as to whether such relationship or connection existed must be resolved in favor of a finding of privilege." Costa v. Superior Court (Passalacqua), 204 Cal. Rptr. 1, 3 (Cal. App. 1984).
 
 
 11
 Ferguson makes one argument that we need address in some detail. He argues that the district court (and thereby this court due to the nature of our review) could reasonably conclude that Lancer sued in order to invoke the privilege and immunize the communications. Thus, he argues that the statements were not in good-faith anticipation of litigation, and therefore, the court can not rule as a matter of law that the privilege existed. See Furhman v. California Satellite Systems, 231 Cal. Rptr. 113, 118-19 (Cal. App. 1986). The evidence that the litigation was manufactured was weak. During the trial, Lancer's in-house counsel was cross-examined by Ferguson and asked:
 
 
 12
 "Q. Mr. Maher, is it your testimony that the Lancer Insurance Company brought this lawsuit against Mr. Ferguson to recover $312.92?
 
 
 13
 A. No, sir, I didn't testify to that.
 
 
 14
 Q. I asked you if it is -- if that is your position?
 
 
 15
 A. No."
 
 
 16
 At no point, however, is this evidence or inferences therefrom turned into an affirmative argument that the lawsuit was initiated merely to cover the communications with the privilege. In fact, Ferguson, during his closing argument, argues that it takes longer than four days to prepare a complaint. A reasonable jury could infer from this argument that Lancer had preplanned the filing of the lawsuit, and, therefore, that the lawsuit was not instituted to cover the previous communications. This position is contrary to the idea that the lawsuit was begun in bad faith, and that the communications at issue were not in good faith anticipation of litigation.
 
 
 17
 Ferguson failed to come forth with any evidence to support his claim that the communications were not privileged. The district court clearly erred in failing to find that the litigation privilege under Cal.Civ.Code Sec.47(b) applied. It is therefore "clear that the evidence and inferences cannot reasonably support judgment in favor of [Lancer]." Transgo, 768 F.2d at 1014. Because punitive damages were based on the tort claims, to which the privilege applies, they must be set aside.
 
 
 18
 C. The General Verdict Form.
 
 
 19
 The verdict form in this case did not separate the various theories of recovery. It merely asked whether the jury found in favor of one party or another and for how much.
 
 
 20
 As a general rule, "a general jury verdict will be upheld only if there is substantial evidence to support each and every theory of liability submitted to the jury." Syufy Enterprises v. American Multi-cinema, Inc., 793 F.2d 990, 1001 (9th Cir. 1986); see also Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 29-30, 82 S.Ct. 1130, 1135-36, 8 L.Ed.2d 305 (1962). However, we may construe a general verdict as attributable to one of several theories if it was supported by substantial evidence and was submitted to the jury free from error. Traver v. Meshriy, 627 F.2d 934, 938 (9th Cir. 1980). The factors we must consider in deciding whether to exercise this discretion are: (1) the potential for confusion of the jury; (2) whether the losing party's defenses apply to the count upon which the verdict is being sustained; (3) the strength of the evidence supporting the count relied upon to sustain the verdict; and (4) the extent to which the same disputed issues of fact apply to the various legal theories. Id. at 938-39.
 
 
 21
 Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 777 (9th Cir. 1990) (footnote deleted).
 
 
 22
 The only claim that survives regarding Lancer is the breach of contract claim. Under the fourth factor cited, the disputed issues of fact were different as between the contract and tort theories. Because only one of five theories of recovery has survived our decision here today, we decline to exercise our discretion to save this verdict. We therefore remand to the district court to enter judgment for Lancer on Fergusons' claims for defamation, intentional interference with prospective economic advantage, and intentional infliction of emotional distress, and to set a new trial on the contract claims.
 
 
 23
 II. TIB.
 
 
 24
 A. Standard of Review.
 
 
 25
 TIB also filed a post-trial motion for judgment as a matter of law pursuant to Fed.R.Civ.P.50, or alternatively for a new trial pursuant to Fed.R.Civ.P.59. The standard of review is set out under section I.A., infra.
 
 
 26
 B. The Common Interest Privilege.
 
 
 27
 The litigation privilege does not apply to TIB. However, under Cal.Civ.Code Sec. 47(c), a communication falls within the common interest privilege if it is
 
 
 28
 without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.
 
 
 29
 Cal.Civ.Code Sec.47(c). If the defamation defendant shows that the communication is privileged, the defamation plaintiff bears the burden of pleading and proving malice. Lundquist v. Reusser, 875 P.2d 1279, 1280 (Cal. 1994). The district court denied TIB's proposed jury instructions applying the common interest privilege and rejected their arguments in their motion under Fed.R.Civ.P.50 that the common interest privilege existed as a matter of law.[3]
 
 
 30
 TIB argues that it had a common interest with Lancer, as they had the relationship of producer to insurer. Lancer had an interest in its own well-being, TIB shared this interest as it depended on Lancer's well-being to sell Lancer policies and reap commissions, and TIB's allegations about Ferguson's selling insurance by putting Lancer in a negative light concerned that common interest. Ferguson does not attempt to refute the existence of the privilege as to TIB.
 
 
 31
 Instead, Ferguson argues that, regardless of whether Lancer, and therefore TIB, and the customers had a common interest, the fact that the jury found punitive damages indicates that any failure to instruct the jury about the common interest privilege is harmless error. If the jury found malice to support punitive damages, it would have found malice to refute the common interest privilege if asked.
 
 
 32
 The California Supreme Court has recently addressed this issue and applied harmless error analysis when a trial court erred by failing to instruct a jury on the common interest privilege. In Lundquist, supra, as in the case before us, there was a jury award of punitive damages. The court found harmless the instruction error because the jury necessarily found malice in awarding punitive damages. Lundquist, 875 P.2d at 1291-92. The existence of malice defeats the common interest privilege.
 
 
 33
 Here, the district court erred in failing to instruct on the common interest privilege. However, because the jury also awarded punitive damages, an element of which is malice, any error in failing to instruct was harmless.
 
 
 34
 C. The Privilege of Competition.
 
 
 35
 TIB appeals from the denial of its motion under Fed.R.Civ.P.50 as to the intentional interference with prospective economic advantage claim. It claims that the district court erred by ruling that it was not protected by the privilege of competition. The California courts recognize the privilege of competition as set forth in the Restatement of Torts, Second Sec.768:
 
 
 36
 (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
 
 
 37
 (a) the relation concerns a matter involved in the competition between the actor and the other and
 
 
 38
 (b) the actor does not employ wrongful means and
 
 
 39
 (c) his action does not create or continue an unlawful restraint of trade and
 
 
 40
 (d) his purpose is at least in part to advance his interest in competing with the other....
 
 
 41
 See A-Mark Coin. Co. v. General Mills, Inc., 195 Cal. Rptr. 859, 867 (Cal. App. 1983). Under the appropriate standard of review, the district court's denial of the motion should be affirmed if there is substantial evidence showing that the above elements were not met. TIB cannot show that it did not employ wrongful means because there is substantial evidence to show that company employees slandered Ferguson. The jury could rightfully find that the statements by TIB to Lancer that Ferguson was negative selling, and that he was "queer", "homosexual", and a "scumbag" were slanderous. Thus, TIB is not entitled to protection from its comments by the privilege of competition.
 
 
 42
 D. Causation and Damages.
 
 
 43
 TIB also challenges the district court's denial of its motion under Fed.R.Civ.P.50 on the grounds that there was not sufficient evidence of causation or damages. The denial of the motion should be affirmed if there is substantial evidence to support Ferguson's positions. See section I.A. infra. Cause is established if the communications were a substantial factor in causing emotional distress and reputational injury, United States Fidelity and Guar. Co. v. American Employer's Ins. Co., 205 Cal. Rptr. 460, 465 (Cal. App. 1984), and but for cause of the impairment with Ferguson's business relations. Youst v. Longo, 729 P.2d 728, 733 (Cal. 1987). To affirm the denial of the motion as to damages, there must be evidence that the damages were reasonably certain. Recovery will not be denied simply because damages are difficult to ascertain. See Pollack v. Lyttle, 175 Cal. Rptr. 81, 86 (Cal. App. 1981).
 
 
 44
 There was ample evidence that TIB employees told Lancer personnel that Ferguson was "negative selling," was "unethical," "gay," "a queer," "homosexual," "a scumbag," and that "he didn't take the best care of his customers." TIB also tried to get Lancer to terminate Ferguson's producer agreement and to "let us write that business for you." It is undisputed that Lancer terminated the producer agreement. It is also undisputed that Ferguson testified that the loss of his Lancer business and the surrounding events caused him headaches, stress, asthma, and other health problems. A reasonable jury could conclude that TIB's comments to Lancer caused Ferguson emotional distress both directly and indirectly. The comments directly inflicted when Ferguson became personally aware of the actual accusations, and the comments indirectly inflicted additional injury both when they induced Lancer to terminate the producer agreement and when Lancer further circulated them. Although Lancer's employees testified that they did not rely on TIB's comments in terminating Ferguson's producer agreement, substantial evidence exists that they in fact did. Based upon the amount of the evidence presented, a reasonable jury could disregard Lancer's testimony and find that TIB's comments did affect Lancer's decision.
 
 
 45
 Ferguson introduced testimony that he lost $26,000 in commissions and $5,000 in lost interest on those commissions. He introduced evidence showing that he is a successful bus insurance broker with a five year relationship with Lancer and that his sales kept increasing. He introduced evidence of his projected business losses over five, ten, and fifteen years. The five-year figures were presented with three percent and six percent discount rates at $285,000 and $269,723. The jury assessed $128,800 in compensatory damages against Lancer and $72,900 against TIB. The lost commission amounts, coupled with the business losses as well as the emotional distress testimony, equates to substantial evidence supporting the award of $72,900 in damages against TIB.
 
 
 46
 E. Punitive Damages.
 
 
 47
 We will review the punitive damages award under both California and federal law.
 
 
 48
 1. California Law.
 
 
 49
 California courts of appeal review punitive damage awards to see whether "the award is excessive as a matter of law or raises a presumption that it is the product of passion or prejudice." Adams v. Murakami, 813 P.2d 1348, 1350 (Cal. 1991) (citing Neal v. Farmers Ins. Exch., 21 Cal. 3d 910, 928, 582 P.2d 980, 148 Cal. Rptr. 389 (1978)). The review consists of three factors: the nature of the defendant's wrongdoing, the amount of the compensatory award, and the wealth of the defendant. "Because the quintessence of punitive damages is to deter future misconduct by the defendant, the key question before the reviewing court is whether the amount of damages 'exceeds the level necessary to properly punish and deter."' Id. (citing Neal, supra.)
 
 
 50
 The jury could reasonably find that TIB's slander of Ferguson as previously set forth in this disposition was reprehensible. TIB was making these statements to Lancer over a three-year period. Such conduct, the jury could reasonably determine, should not be countenanced.
 
 
 51
 The jury awarded Ferguson $175,000 in punitive damages against TIB. This is approximately two and one-half times the amount of compensatory damages awarded. This is well within the ratio California courts have previously upheld. See Wollersheim v. Church of Scientology, 6 Cal. Rptr. 2d 532, 548-55 (Cal. App. 1992)(Appendix).
 
 
 52
 TIB stipulated that its net worth was $621,000 with a gross income in 1991 of $4,000,000. It reported earnings in 1991 of $25,000 but paid salaries of $300,000 each to the company's two owners. The punitive damages award was 28 percent of TIB's net worth. California courts have upheld an award of 50 percent of a defendant's net worth. See Douglas v. Ostermeier, 2 Cal. Rptr. 2d 594, 605-07 (Cal. App. 1991). In addition to the stipulated net worth, a reasonable jury could have considered the salaries paid to TIB's owners in determining the amount of punitive damages to award. Punitive damages of $175,000 do not appear to us to be borne of "passion or prejudice" on the part of the jury, nor does the award "exceed the level necessary to punish and deter." Adams, 284 Cal. Rptr. at 320.
 
 
 53
 2. Federal Law.
 
 
 54
 In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991) the Supreme Court set out the factors to determine whether punitive damage awards are excessive:
 
 
 55
 (a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct...; (c) the profitability to the defendant of the wrongful conduct...; (d) the "financial position" of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation.
 
 
 56
 Haslip, 499 U.S. at 21-22.
 
 
 57
 The award against TIB withstands scrutiny here also. In addition to the analysis done under California law, factor (c) also weighs in favor of the award because TIB gained some of Ferguson's Lancer customers after the termination.
 
 
 58
 3. Jury Instruction.
 
 
 59
 TIB also claims that the district court erred in failing to properly instruct the jury on punitive damages. However, TIB failed to object to the instruction as given. Fed.R.Civ.P.51 requires that a party specifically object to a jury instruction it later seeks to assign as error. We strictly construe this rule, see Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1152 (9th Cir. 1990) and deem this issue waived.
 
 
 60
 F. The General Verdict.
 
 
 61
 The standard to be applied is addressed in section I.C. supra. In applying the Kern test, we note that any confusion the jury may have had with regard to the unfair trade practices count was eliminated by the district court's answer, on the record, to the jury's question. The district court stated:
 
 
 62
 ...The question about unfair trade practices is simply a question that we are asking you to answer. It has nothing to do with--this is a question that the court wants answered.
 
 
 63
 * * *
 
 
 64
 * * *
 
 
 65
 JUROR WORILLOW: Under "A" the question you want answered is just unfair trade practices, that has nothing to do with punitive damages or anything else?
 
 
 66
 THE COURT: That's right. That's a separate question.
 
 
 67
 JUROR WORILLOW: Okay.
 
 
 68
 Because all other causes of action against TIB are supported by substantial evidence and are free from reversible error, the general verdict and the punitive damage award against TIB are AFFIRMED.
 
 CONCLUSION
 
 69
 The district court's judgment against Lancer is REVERSED and REMANDED for a new trial on the contract claims. The district court's judgment against TIB is AFFIRMED.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On February 14, 1994, the parties filed a stipulation dismissing Ferguson's appeal of the district court's order denying their motion for attorneys' fees and treble damages
 
 
 [2]
 Ferguson has conceded that the district court erred in allowing their unfair trade practice claim to go to the jury
 
 
 [3]
 Lancer also raises the same issues. However, because we have ruled that the litigation privilege applies to Lancer, we need not address this or any other arguments made by Lancer